**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD W. POWELL, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 20-1565 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In this lawsuit, Plaintiff, Richard W. Powell, Jr. ("Mr. Powell" or "Plaintiff"), seeks a refund from the Internal Revenue Service ("IRS") of payments he made towards trust fund recovery penalties assessed pursuant to 26 U.S.C. § 6672. (Doc. 16). The United States filed a counterclaim for the full amount of outstanding penalties owed to the IRS. (Doc. 17). Having conducted a two-day Bench Trial on July 10-11, 2023, the Court hereby rules as follows:

**I.     FINDINGS OF FACT**

1.     Michael's Automotive Services ("MAS") was incorporated in July 2004. (Doc. 76, Joint Stipulation of Facts ("Joint Stip.") ¶ 1).

2.     At all relevant times, MAS was an auto repair shop. (Doc. 87, Tr. vol. 1 at 80:9-19; Doc. 88, Tr. vol. 2 at 5:8-15).

3.     The auto repair shop was located in Uniontown, Pennsylvania. (Tr. vol. 1 at 80:20-22).

4.     Michael Pavlock ("Pavlock") founded MAS and was the "Michael" in MAS's name. (Tr. vol. 2 at 5:16-6:19; 52:6-8).

5. MAS had employees during the tax periods ending March 31, 2005 through December 31, 2007.  (Joint Stip. ¶ 9 & Joint Exs. 1-13).

6. Spencer Graham was the president of MAS during the relevant tax periods.  (Tr. vol. 1 at 33:17-19; 41:19-24; 42:8-14; Pl. Ex. 2).

7. Mr. Graham signed and filed MAS's Articles of Incorporation and an Articles of Incorporation Profit Amendment, and had some check-writing authority.  (Pl. Ex. 2; Tr. vol. 1 at 23:5-19, 38:8-15, 41:10-15; vol. 2 at 33:5-7).

8. Mr. Graham could not recall seeing any corporate bylaws for MAS.  (Tr. vol. 1 at 41:2-6).  No corporate bylaws were introduced as evidence at trial.

9. Mr. Graham made loans to MAS at Mr. Pavlock's direction to help cover MAS's expenses, including payroll.  (Tr. vol. 1 at 44:5-7).

10. Xin ("Cindy") Liu was the accountant for MAS from approximately Fall 2005 through Spring 2007.  (Joint Stip. ¶ 3; Tr. vol. 1 at 57:3-56:3; 66:11-13).

11. Ms. Liu's office was physically located in Cheat Lake, West Virginia.  She did not work in MAS's Uniontown, PA garage.  (Tr. vol. 1 at 59:8-10, 72:10-14).

12. During her employment, Ms. Liu paid creditors, vendors and employees of MAS.  (Tr. vol. 1 at 58:18-59:7, 63:2-12).

13. During her employment, Ms. Liu did the payroll for MAS.  (Tr. vol. 1 at 67:13-15).

14. During her employment, Ms. Liu prepared the payroll tax returns for MAS, using QuickBooks software.  Ms. Liu did not file the tax returns she prepared.  (Tr. vol. 1 at 58:9-10, 59:11-24, 64:22-25).

15. Ms. Liu understood it to be Mr. Pavlock's responsibility to file the tax returns, once prepared. (Tr. vol. 1 at 59:21-24, 60:7-9).

16. Ms. Liu testified that she was not aware of MAS's tax delinquency. (Tr. vol. 1 at 65:2-8).

17. Mr. Graham also testified that it was Mr. Pavlock's duty to make tax payments on behalf of MAS. (Tr. vol. 1 at 38:19-24).

18. Plaintiff, Richard Powell ("Plaintiff" or "Powell"), worked for MAS from February 20, 2006 through December 31, 2007. (Joint Stip. ¶ 2; Tr. vol. 1 at 78:2-3; 79:4-6).

19. Plaintiff's MAS W-2 Forms indicate that his MAS wages totaled $29,038.42 in 2006, and $34,999.90 in 2007. (Joint Ex. 23 at 0061, Joint Ex. 24 at 0065).

20. Prior to his employment at MAS, Plaintiff worked in his family-owned grocery store, worked as a painter, and owned a marina located at Cheat Lake, West Virginia, named Lakeside Marina. (Tr. vol. 1 at 76:23-25).[1]

21. Prior to his MAS employment, Plaintiff attended college only briefly, taking some real estate classes at Pennsylvania State University's Fayette County campus. (Tr. vol. 1 at 76:16-20).

---

[1] While employed at MAS, Plaintiff continued to do work at Lakeside Marina, which he owned. (Tr. vol. 1 at 110:6-9, 131:1-10). Lakeside Marina maintained boat docks at Cheat Lake and performed services such as winterization, storage and cleaning of boats. (Tr. vol. 1 at 130:17-131:8). During his MAS employment, Plaintiff also worked at another of Mr. Pavlock's businesses, a weekly newspaper called Masontown Telegraph. (Tr. vol. 1 at 112:13-22, 112:25-113:1-7; vol. 2 at 9-25). During his MAS employment, Plaintiff also was a managing member of an entity in which Mr. Pavlock was involved called PPGK, LLC, which was a holding company for various investment properties. (Tr. vol. 1 at 122:9-13, 123:8-9, 132:19-21; vol. 2 at 6:19-7:11, 8:19-9:4). Plaintiff did not invest any money into PPGK, LLC. Rather, Mr. Pavlock had him work at his businesses for "sweat equity." (Tr. vol. 2 at 8:23-9:4, 37:16-20).

22.     Plaintiff's parents had been involved financially with Mr. Pavlock. (Tr. vol. 1 at 77:6-7).

23.     Mr. Pavlock hired Plaintiff. (Tr. vol. 1 at 78:5-6).

24.     Mr. Graham, Ms. Liu and Mr. Powell all testified that Mr. Pavlock was the head decision-maker at MAS. (Tr. vol. 1 at 35:4-13, 40:22-41:1, 60:7-9, 63:18-20, 78:12-25, 79:22-25, 122:14-18).

25.     Mr. Pavlock supervised the employees at MAS. (Tr. vol. 1 at 36:22-24, 37:21-23, 38:1-3; 78:12-15, 88:1-2; 89:6-7).

26.     Mr. Graham testified that, to his knowledge, no one helped Mr. Pavlock with managing or supervising MAS employees, and that Mr. Pavlock made all decisions relating to employees and employee matters. Mr. Graham also testified that "there was not much democracy" at MAS when it came to discussing business decisions for the company. Rather, "it was going to be Mike [Pavlock]'s way or – that was just the way it was going to be. . . . Ultimately, those decisions were made . . . whether you liked them or not." (Tr. vol. 1 at 35:4-13, 37:21-23, 38:1-3).

27.     Plaintiff reported directly to Mr. Pavlock. (Tr. vol. 1 at 78:12-13).

28.     Plaintiff's exact job title at MAS is unclear. Mr. Pavlock could not recall Plaintiff's job title but described him as an operations coordinator. (Tr. vol. 2 at 15:16-20, 51:16-23). Mr. Graham also could not recall Mr. Powell's job title or his job duties, only that Mr. Powell was "constantly working." (Tr. vol. 1 at 36:4-14, 45:3-8; 47:5-8). Ms. Liu likewise testified that she did not know Mr. Powell's exact title or duties; only that he seemed like a manager but got paid like an employee. (Tr. vol 1 at 68:13-17, 69:4-10). The Centra bank account lists Mr. Powell as general manager. (Joint Ex. 26 at 0088).

4

29.     Irrespective of his job title, Plaintiff's job duties consisted of running errands at the direction of Mr. Pavlock and otherwise completing whatever tasks Mr. Pavlock assigned him on a given day.  (Tr. vol. 1 at 79:7-14, 85:3-19, 87:20-23).

30.     No one at MAS other than Mr. Pavlock had the duty or ability to assign tasks to Plaintiff.  (Tr. vol. 1 at 85:16-19).

31.     Mr. Pavlock occasionally held "unilateral" meetings at MAS, during which Mr. Pavlock would tell the attendees what tasks he wanted done.  (Tr. vol 1 at 87:24-88:14).

32.     Although Mr. Graham recalled meetings at which MAS's finances were discussed, he did not recall any discussion of employee withholding taxes at those meetings (Tr. vol. 1 at 41:25-42:7).

33.     Craig Golden was the managing member of Golden Investment Acquisitions, which provided funds to Mr. Pavlock to start various businesses.  (Craig Golden Deposition ("Golden Dep.", Doc. No. 75-1) at 12:1-13:21).  Mr. Golden testified in a deposition designated for use at trial that he attended general meetings from time to time at which Mr. Pavlock would relay what daily activities he wanted the attendees to do in connection with his businesses.  (Golden Dep. at 12:1-13:21, 18:8-19:3, 20:2-6).  Mr. Golden testified that Plaintiff was present at some of those meetings.  (Golden Dep. at 20:5-7).  Mr. Golden stated that, to his recollection, neither taxes nor payroll were discussed at the meetings he attended.  (Golden Dep. At 23:2-9).

34.     Plaintiff never spoke about finances or gave any financial reports at any meetings he attended.  (Tr. vol. 1 at 88:15-22).

35.     At the direction of Mr. Pavlock, Plaintiff opened, and was an authorized signatory on, a single bank account of MAS at Centra Bank.  (Joint Stip. ¶¶ 10-12; Joint Exs. 26-27; Tr. vol. 1 at 84:4-6; 94:3-11).

36. Plaintiff signed checks on this bank account at the direction of Mr. Pavlock. (Joint Stip. ¶¶ 11-12; Joint Exs. 26-27; Tr. vol. 1 at 84:15-21, 89:20-90:5, 98:1-15, 116:14-15).

37. The purpose of the checking account was to buy parts for MAS. (Tr. vol. 1 at 94:6-9). There was no evidence introduced showing that the Centra bank account was used to make tax payments.

38. Plaintiff retrieved mail at MAS; he did not open mail for MAS. (Tr. vol. 1 at 85:20-25, 106:11-12, 113:22-24).

39. Plaintiff was not a shareholder of MAS. (Joint Stip. ¶ 4; Tr. vol. 1 at 87:17-19).

40. Plaintiff was not a capital contributor of MAS. (Joint Stip. ¶ 5).

41. Plaintiff did not receive stock certificates for his involvement with MAS. (Joint Stip. ¶ 6).

42. Plaintiff did not have the ability to hire or fire employees at MAS. (Tr. vol. 1 at 78:16-25, 83:18-19).

43. Plaintiff did not have the ability to enter into contracts on behalf of MAS. (Tr. vol. 1 at 87:12-16).

44. Plaintiff did not determine financial policies for MAS. (Tr. vol. 1 at 83:13-17).

45. Plaintiff never authorized or calculated payroll for MAS. (Tr. vol. 1 at 84:7-9, 86:1-3).

46. Plaintiff's duties at MAS did not include collecting employee withholding taxes. (Tr. vol. 1 at 86:8-10, 98:16-23).

47. Plaintiff never remitted employee withholding tax to the federal government on behalf of MAS. (Tr. vol. 1 at 87:6-8).

48.     Plaintiff never prepared, reviewed, signed or filed tax returns on behalf of MAS. (Tr. vol. 1 at 84:13-14, 90:16-21; Jt. Exs. 1-19).

49.     Plaintiff never made any tax payments on behalf of MAS.  (Joint Stip. ¶ 7; Tr. vol. 1 at 86:4-7, 87:6-8).

50.     For the tax periods ending March 31, 2005, through December 31, 2007, MAS failed to pay to the United States the income tax, social security and Medicare withholdings it withheld from the wages of its employees.  (Joint Stip. ¶ 8; Joint Ex. 29).

51.     The IRS timely assessed Plaintiff with civil penalties pursuant to 26 U.S.C. § 6672 related to the employment taxes withheld from the wages of the employees of MAS for the tax periods ending March 31, 2005, through December 31, 2007.  (Joint Stip. ¶ 13; Joint Ex. 29).

52.     The amounts of the assessments made against Plaintiff for the civil penalties pursuant to 26 U.S.C. § 6672 and the outstanding balances for these assessments totaled $442,058.66 as of March 21, 2022.  (Joint Stip. ¶ 14; Joint Ex. 29).

53.     Plaintiff was not aware of MAS's tax liabilities during his employment at MAS. (Tr. vol. 1 at 81:5-13, 99:5-9, 17-20, 23-25; 100:5-7, 11-13).

54.     The IRS received multiple Forms 843, Claim for Refund and Request for Abatement, from Mr. Powell on February 5, 2018.  (Joint Stip. ¶ 15; Def. Exs. 24-32).

55.     Plaintiff's administrative claim requested a refund of $225 for tax periods ending December 31, 2005 through December 31, 2007.  (Joint Stip. ¶ 16; Def. Exs. 24-32).

56.     Plaintiff made a total payment of $225 to the United States, which was applied on or about March 28, 2018.  (Joint Stip. ¶ 17; Def. Exs. 35-43).

57.     On October 19, 2018, the IRS denied Plaintiff's claim for a refund of $225.  (Joint Stip. ¶¶ 17-18; Def. Ex. 46).

58. Based on its observations of the witnesses' testimony, demeanor, and mannerisms during the bench trial, the Court makes the following credibility determinations:

a. The Court finds Plaintiff's testimony credible, including, *inter alia*, that he: did not open mail for MAS; did not have the ability to hire or fire employees at MAS or to enter into contracts on behalf of MAS; did not determine financial policies for MAS; never authorized or calculated payroll for MAS; did not prepare tax returns or collect employee withholding taxes for MAS; wrote checks from the Centra account only at Mr. Pavlock's direction; and was not aware of MAS's tax liabilities during his employment.

b. The Court finds Michael Pavlock's contrary testimony not credible, including, *inter alia*, his testimony that: Plaintiff had the authority to supervise, hire and fire employees at MAS; Plaintiff had control over payroll matters; Plaintiff had the authority to enter into contracts for MAS; and that Mr. Pavlock told Plaintiff about MAS's outstanding tax liabilities.

c. The Court finds Ms. Liu's testimony described above to be credible.  The Court disagrees with the Government, however, that Ms. Liu testified that Plaintiff had the authority to supervise, hire or fire MAS employees.  To the contrary, in context, Ms. Liu was uncertain whether Plaintiff supervised employees, testifying only, "I think so," and later admitting that she never directly witnessed Plaintiff supervising anyone.  (Tr. vol. 1

at 68:18-19, 73:6-8).[2] When asked whether she thought Plaintiff hired and fired employees, Ms. Liu responded, "I don't know that." (Tr. vol. 1 at 68:20-21). Ms. Liu further testified that she did not think about whether Plaintiff was an officer of MAS or what his job title was, and that she never saw any formal documentation regarding the same. (Tr. vol. 1 at 68:22-69:11).

d. The Court finds Spencer Graham's testimony described above to be credible.

## II. CONCLUSIONS OF LAW

**A.** **Section 6672**

1. This Court has original jurisdiction over this matter pursuant to 26 U.S.C. §1346(a)(1).

2. As an employer, MAS was required by the Internal Revenue Code to withhold federal social security and income taxes from the wages of its employees and to pay those withheld amounts, called trust fund taxes, to the IRS. 26 U.S.C. §§ 3102(a), 3402(a).

3. Pursuant to Section 6672 of the Internal Revenue Code:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

---

[2] Moreover, counsel for the Government did not ask Ms. Liu if she "knew" whether Plaintiff was supervising MAS employees, only whether she "thought" he did. *See* Tr. vol. 1 at 68:18-19 ("Q. Do you think he supervised employees? A. I think so."). Indeed, Ms. Liu responded with an air of uncertainty to the entirety of the Government's line of questioning in this regard. (Tr. vol. 1 at 68:18-69:11).

26 U.S.C. § 6672(a).

4. To be liable under Section 6672, an individual must be (1) a "responsible person" and (2) his failure to collect, truthfully account for or pay over the tax must be "willful." *See, e.g.,* United States v. Commander, 734 F. App'x 824, 829 (3d Cir. 2018); Greenberg v. United States, 46 F.3d 239, 242 (3d Cir. 1994).

5. The IRS does not need to attempt to collect the withholding taxes from the employer before seeking to collect from a responsible person. *See* United States v. Pepperman, 976 F.2d 123, 127 (3d Cir. 1992).

**B.   Burden of Proof**

6. When the IRS assesses liability under Section 6672, that assessment is granted a "rebuttable presumption" of being correct. Samango v. United States, 833 F. App'x 941, 945 (3d Cir. 2020) (citing Brounstein v. United States, 979 F.2d 954 (3d Cir. 1992)); Psaty v. United States, 442 F.2d 1154, 1160 (3d Cir. 1971)).

7. A taxpayer must rebut the presumption by a "preponderance of the evidence." Samango, 833 F. App'x at 945 (quoting Psaty, 442 F.2d at 1160 (citation omitted)).

8. Therefore, if a taxpayer challenges a Section 6672 assessment in federal court, he bears the burden of providing sufficient evidence to show that the assessment was incorrect because either he was not a responsible person or he did not willfully fail to pay the tax. Id. (citing Brounstein, 979 F.2d at 954); *see also* United States v. Vespe, 868 F.2d 1328, 1331 (3d Cir. 1989).[3]

---

[3] Citing Sgro v. United States, No. Civ. A. 04-1415, 2006 WL 2136380 (W.D. Pa. July 28, 2006) and this Court's order denying the parties' cross motions for summary judgment (Doc. 50), Plaintiff argues that it is the Government's burden to establish Mr. Powell's tax liability under section 6672 by a preponderance of the evidence. To the extent Plaintiff's argument is inconsistent with the standard outlined above and in the Third Circuit caselaw, the Court rejects

C.      **Responsible Person**

9.      A "responsible person" under Section 6672 "is a person required to collect, truthfully account for or pay over any tax due to the United States." United States v. Carrigan, 31 F.3d 130, 133 (3d Cir. 1994) (citing Brounstein, 979 F.2d at 954); *see also* Ahmed v. Comm'r of Internal Revenue, 64 F.4th 477, 481 (3d Cir. 2023); Greenberg, 46 F.3d at 242-43; 26 U.S.C. § 6671(b) (defining "person"); Slodov v. United States, 436 U.S. 238, 250 (1978).

10.     "Responsibility is a matter of status, duty, or authority, not knowledge." Carrigan, 31 F.3d at 133 (quoting Quattrone Accountants, Inc. v. IRS, 895 F.2d 921, 927 (3d Cir. 1990)).

11.     Targeting "responsible persons" permits the IRS "to pierce the corporate veil and proceed against [the individuals] responsible for collecting the offending company's quarterly employment taxes." Ahmed, 64 F.4th at 481 (quoting United States v. Farr, 536 F.3d 1174, 1177 (10th Cir. 2008)).

12.     A responsible person "need not have exclusive control over the company's finances, he need only have significant control." Carrigan, 31 F.3d at 133. "A person has significant control if he has the final or significant word over which bills or creditors get paid." Id. (quoting Quattrone, 895 F.2d at 927).

---

it.  In its summary judgment order, this Court cited Sgro in the context of resolving the parties' cross motions for summary judgment.  It is well-established that, to prevail on a motion for summary judgment, each moving party must show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. Because the record demonstrated genuine issues of material fact as to both responsibility and willfulness, neither party met this burden. See Sgro, 2006 WL 2136380 at * 2 (denying cross motions for summary judgment); *see also* United States v. Carrigan, 31 F.3d 130, 133 (3d Cr. 1994) (appellate case relied on by Sgro, discussing summary judgment burdens and reversing award of summary judgment in favor of the Government because factual issues existed as to responsibility and willfulness).

11

13. Other non-exclusive factors for courts to consider in determining whether a person is a responsible person include: (1) the contents of the corporate by-laws; (2) the ability of the individual to sign checks on the company's bank account; (3) the taxpayer's signature on the employer's federal employment or other tax returns; (4) payment of other creditors in lieu of the United States; (5) the identity of the officers, directors and principal shareholders of the corporation; (6) the identity of the individuals who hired and fired employees; and (7) the identity of the individuals who were in charge of the corporation's financial affairs. See Brounstein, 979 F.2d at 954-55; Carrigan, 31 F.3d at 133.

14. More than one person may be a responsible person within the meaning of Section 6672. See Brounstein, 979 F.2d at 955.

15. The Court finds that Plaintiff has rebutted any presumption of liability established by the IRS and proven, by a preponderance of the evidence, that he was not a "responsible person" within the meaning of Section 6672.

16. Examining the factors outlined by the Court of Appeals, Plaintiff was not an officer, director or shareholder of MAS. He never prepared or signed any federal employment or other tax returns on behalf of MAS, nor was it within his job duties or authority to do so. Plaintiff did not have the authority to hire or fire employees at MAS, and there is no evidence that he ever did so. Plaintiff was not in charge of MAS's corporate or financial affairs. At most, Plaintiff opened, and was a signatory on, a single MAS bank account and wrote checks on that account. This factor, however, is not dispositive. As the credible witness testimony and record evidence establishes, Plaintiff opened the Centra account and wrote checks from the account only at Mr. Pavlock's direction. Mr. Pavlock, not Plaintiff, had the final word over which bills or creditors got paid from the account. Plaintiff did not have significant control over those

decisions. *See* Hudson v. United States, No. CIV.A. 98-1811, 1999 WL 820453, at *5 (E.D. Pa. Sept. 29, 1999) ("[T]he authority to sign checks is not sufficient in the absence of authority to determine which checks get written."). None of these checks was used to pay taxes, and there is no contention that Plaintiff was a signatory on any other MAS accounts.

17. Plaintiff, Mr. Graham and Ms. Liu each testified that Mr. Pavlock had the decision-making authority at MAS. There is no evidence that Plaintiff shared that responsibility, other than Mr. Pavlock's self-serving testimony, which the Court does not find to be credible. To the contrary, the preponderance of the credible record evidence outlined above shows that Mr. Powell did not have significant control over MAS or its finances. *See, e.g.,* Findings of Fact ¶¶ 23-49.

18. Although more than one person may be a "responsible person" within the meaning of the Act, Plaintiff does not meet the criteria to be considered a "responsible person" together with Mr. Pavlock. The credible evidence does not support a conclusion that Plaintiff shared significant control over MAS's finances or had the authority to exercise such control.

19. Plaintiff's duties, status and authority in this case do not approach the level of duty, status or authority enjoyed by the individuals found responsible in the cases the Government cites to support its proposed conclusions. *See, e.g.*, Quattrone, 895 F.2d at 927 (responsible person had significant control over company finances; had the authority to pay the company's monthly bills without prior approval; possessed signature stamps of the company treasurer and president; provided daily financial advice to the company; obtained loans for the company; and prepared and filed company tax returns); Brounstein, 979 F.2d at 955–56 (appellant routinely signed payroll checks to employees; often signed stock certificates, income-tax returns and business financial disclosures; held the positions of president and assistant

13

treasurer; and the company bylaws vested him with managerial authority to run the operations of the company); Greenberg, 46 F.3d at 243–44 (responsible person was an authorized signatory on all of company's corporate checking accounts and had unrestricted access to them at all times; signed most of the payroll checks as well as checks written to a variety of other creditors, including the United States; was an officer of the company (controller), a member of its Board of Directors and a minority shareholder; was aware of the employment tax delinquency as soon as it arose; was in charge of the accounting department; supervised the reconciliation of checking account statements; completed various tax forms; and played a role in the hiring and firing of employees); Vespe, 868 F.2d at 1332–33 (finding significant evidence that Mr. Vespe was a responsible person in a company called "Vespe the Versatile" including, *inter alia*, testimony that Mr. Vespe: controlled Vespe the Versatile and two other companies that ran out of the same building; was in charge of whatever work the employees in that building were doing; controlled which creditors would get paid; exercised control over hiring and firing decisions; and had significant input as to decisions affecting how much money came into the company, including decisions involving tax delinquencies).[4]

20. Plaintiff's duty, status and authority were more akin to, and even less significant than, that of the employee in United States v. Carrigan, 31 F.3d 130 (3d Cir. 1994). In Carrigan,

---

[4] The procedural posture of Vespe is important too. In Vespe, a jury returned a verdict in favor of the government and against Mr. Vespe with respect to Vespe the Versatile. Mr. Vespe challenged the district court's refusal to grant his motion for judgment notwithstanding that verdict as to whether he was a responsible person of Vespe the Versatile. The Court of Appeals affirmed the decision, noting the strict standard that applies to such challenges. *See* Vespe, 868 F.2d at 1331-32 (JNOV was proper only if the record showed Mr. Vespe "was not a responsible person so clearly that no rational jury could find to the contrary" and that it must "view the evidence in the light most favorable to the government as the verdict winner and accord it the benefit of all justifiable inferences").

even though the appellant had functioned as the president of the company, exercised his signature authority on one occasion to sign a corporate check applied to the company's tax liabilities, and devoted a significant amount of his time to raising capital for the company, the Court of Appeals reversed the grant of summary judgment in favor of the Government on the issue of responsibility, noting that the record evidence also indicated that the appellant did not own stock in the company, never signed company tax returns, never negotiated with creditors on behalf of the company, and had no independent authority to hire or fire employees without the consent of his co-defendant.  Id. at 133-34.  Given the record evidence, "it could not "be said as a matter of law that he had significant control of the company's financial affairs."  Id.; *see also* id. at 134 ("Based on all the evidence of record, we hold that a reasonable jury could find that Sullivan was not a responsible person.").

### D. Willfulness

21. Even if the record had established that Mr. Powell was a "responsible person" within the meaning of the Code, liability does not attach unless he also acted "willfully" by failing to pay MAS's trust fund taxes over to the IRS.  26 U.S.C. § 6672(a).

22. Responsible persons act "willfully" when they know or act in reckless disregard of the fact that taxes are due.  *See* 26 U.S.C. § 6672(a); *see also* Greenberg, 46 F.3d at 244 (describing willfulness as "a voluntary, conscious and intentional decision to prefer other creditors over the Government").

23. The "reckless disregard" standard is met when a responsible person "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) [they were] in a position to find out for certain very easily."  Carrigan, 31 F.3d at 134;

*see also* Greenberg, 46 F.3d at 244 ("Reckless disregard includes failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid.").

24. Among the behavior recognized as willful is "[a]ny payment to other creditors . . . with knowledge that the employment taxes are due and owing to the Government." Id.

25. The Court finds that Plaintiff has rebutted any presumption of liability established by the Government and proven, by a preponderance of the evidence, that he did not act "willfully" within the meaning of Section 6672.

26. There was no credible evidence introduced indicating that Plaintiff ever was notified during his employment that MAS's withholding taxes were not being paid. Plaintiff's testimony, which the Court credits, establishes that he did not have such knowledge. The testimony of Ms. Liu and Mr. Graham is consistent with Plaintiff's testimony on this issue.

27. The credible witness testimony further establishes that there is no reason Plaintiff ought to have known, during his employment, that there was a grave risk that withholding taxes were not being paid. During his employment, Plaintiff was not in a position to find out MAS's tax status very easily. *See, e.g.,* Findings of Fact ¶¶ 23-49.

28. The fact that Plaintiff may have delivered mail that he did not author or tax returns that he did not prepare to Mr. Pavlock in the course of his job duties does not establish the contents of those documents or that Plaintiff knew or should have known those contents. Such inferences are speculative, at best, and are not supported by credible evidence.[5]

---

[5] Likewise, the fact that Plaintiff may have had access to the MAS office(s) or computer where MAS files were kept does not establish that Plaintiff had the authority to access those files or had knowledge of their contents. The Government misstates Ms. Liu's testimony in this regard. *Compare* Gov't FOF 48 ("During his employment, Richard Powell had the authority to access company records, including financial records." (citing Ms. Liu's testimony at Tr. vol. 1 at 66:18-67:12, 67:21-68:5)) *with* Tr. vol. 1 at Tr. vol. 1 at 66:18-67:12, 67:21-68:5 (Ms. Liu's actual

29. The Notice of Tax Lien Filing addressed to PPGK, LLC does not establish that Plaintiff willfully failed to pay over MAS's trust fund taxes to the IRS during his employment. Even if Plaintiff had received the PPGK Notices, those documents are dated October 2009, almost two years after Plaintiff's MAS employment ended. *See* Joint Ex. 25.

30. Similarly, testimony that Plaintiff worked for Mr. Pavlock for "sweat equity," does not tip the scales in the Government's favor. *See, e.g.*, Tr. vol. 2 at 37:16-24. This testimony does not imply that Plaintiff knew, or ought to have known, of MAS's tax delinquencies and is consistent with Plaintiff's testimony that his job duties were akin to those of an errand boy carrying out everyday tasks at the direction of Mr. Pavlock.[6]

31. Finally, Plaintiff's involvement with Lakeside Marina, Masontown Telegraph or PPGK, LLC, does not counsel a different result. As Plaintiff has noted, the tax delinquencies here belong to MAS. As set forth above, none of the credible record evidence concerning these other entities would, or should, have alerted him to those delinquencies.

32. Because the Court finds that Plaintiff was not a responsible person and did not act willfully within the meaning of 26 U.S.C. § 6672, Plaintiff is not subject to the Trust Fund Recovery penalty and, thus, is entitled to a refund. *See, e.g.,* De Alto v. United States, 40 Fed. Cl. 868, 878 (1998).

---

testimony, stating only that Plaintiff had "access" to the office that she worked out of). Access does not equate with authority.

[6] To be clear, Plaintiff does not attempt to avoid a willfulness finding by contending that he failed to pay taxes at Mr. Pavlock's directive. Indeed, Brounstein would foreclose such a finding. 979 F.2d at 955–56. Rather, Plaintiff's argument is that he lacked knowledge of the tax delinquency entirely. As set forth above, the Court finds credible Plaintiff's testimony in this regard.

33.     Based on the foregoing Findings of Fact and Conclusions of Law, an Order will issue directing the Clerk to enter judgment for Plaintiff as to Count 1 of the Second Amended Complaint in the amount of $225.00, plus interest in accordance with law. Judgment shall be entered in favor of Plaintiff and against the Government as to the Government's counterclaim, and the counterclaim shall be dismissed.

IT IS SO ORDERED.


March 28, 2024                                                        s/Cathy Bissoon
                                                                               Cathy Bissoon
                                                                               United States District Judge


cc (via ECF email notification):

All counsel of record